141 So. 911

### Ex parte BOWDOIN.
4 Div. 861.

Court of Appeals of Alabama.
Jan. 25, 1932.

Rehearing Denied March 22, 1932.

C. L. Rowe and J. C. Fleming, both of Elba, for petitioner.

Huey & Huey, of Enterprise, amici curiæ.

M. A. Owen, of Elba, and M. S. Carmichael, of Montgomery, for respondent.

RICE, J.

Dan Bowdoin, charged with a misdemeanor, in the circuit court of Coffee county, sought by motion to procure the judge of the circuit court, the respondent to this petition, to transfer his case to the inferior court of Coffee county.

Upon the refusal of the circuit judge to grant his motion, he files this petition for mandamus in this court seeking to have the writ issued commanding the said respondent to so transfer said case against petitioner to the said inferior court.

Both petitioner, through his counsel, and respondent, likewise, manifest a commendable desire and purpose to get at the crux of the matter, and to that end waive all technical questions as to the manner and form of procedure, it being tacitly, if not expressly, agreed on the record that, if the act creating the inferior court of Coffee county (Local Acts of Alabama 1931, pp. 183–192) is a valid enactment of the Legislature of Alabama, the petition, here, should be granted. While, if the said act creating said court is unconstitutional and void, the petition should, of course, be denied.

Respondent sets up that, essentially, here, the said act referred to is unconstitutional for two reasons: (1) That the published notice of the proposed bill was not sufficient to comply with section 106 of the Constitution of 1901. (2) That the bill which was enacted into law was introduced in the Legislature, without any notice being given in accordance with said section 106 of the Constitution—this for the reason that the notice that had been given had been exhausted, or had become functus officio, by the passage of an identical bill, to the one resulting in the act aforesaid, known as Senate Bill No. 171, which Senate Bill No. 171 was introduced in the Senate on the same day that the bill (known as House Bill No. 279) which resulted in the act here involved (Local Acts Ala. 1931, pp. 183–192) was introduced in the House, and both of said bills being introduced on the strength of one and the same "published notice."

It appears that said Senate Bill No. 171 was passed by both houses of the Legislature, but was vetoed by the Governor, and never passed over his veto. Const. 1901, § 125. And that this occurred prior, in point of time, to the passage of House Bill No. 279, which—

the act resulting therefrom (Local Acts Ala. 1931, pp. 183–192, supra)—was likewise vetoed by the Governor, but was repassed, over his veto, and became a law under Const. § 125, supra, on July 25, 1931.

We say "became a law," i. e., "became a law," unless unconstitutional for the reasons above designated.

It is to be noted that the act itself states that it "shall take effect immediately upon its *passage and approval* [italics ours] by the Governor."

It was never approved by the Governor, but, we assume, and no question is here raised about it, by the respondent, that the terms "passage," and "approval by the Governor," are used synonymously, and that the bill was effective, if at. all, as from the date of its "passage" in compliance with section 125 of the Constitution, supra. See Jemison v. Town of Ft. Deposit, 21 Ala. App. 331, 108 So. 396.

There are some other incidental questions, raised as to separate sections of the act here involved being unconstitutional, but, if we decided them in accordance with respondent's contention or suggestion, such decision still would not militate against the prayer of petitioner's instant petition being granted—so we pass them over without consideration. As we see it, whatever we might say as to those questions would be but dictum.

We come now to consider the two controlling (on us) grounds of unconstitutionality of the act alleged.

■ As said by our Supreme Court, as its latest utterance on the subject: "It has been frequently announced that the court presumes such act [an act whose constitutionality is assailed, we interpolate] of the Legislature is constitutional, unless it appears to the contrary beyond a reasonable doubt, when the whole statute is looked to for its meaning and under the existing law." State ex rel. J. G. Austin v. M. L. Black, 224 Ala. 200, 139 So. 431, citing numerous authorities.

■ With reference to the first of the above-noted grounds of unconstitutionality alleged against the act creating the inferior court of Coffee county, supra, i. e., the insufficiency of the "local law advertisement (s) under section 106 of the Constitution," under and in pursuance to which same was enacted, we cannot do better than refer the reader to. the excellent discussion of this subject by the late, learned, and lamented Mr. Justice Somerville, in our opinion one of the most erudite Justices who ever graced the bench of our. Supreme Court, in the case of First National Bank of Eutaw v. Smith, 217 Ala. 482, 117 So. 38. At page 485 in the report of this case in 217 Ala., 117 So. 38, 41, Mr. Justice Somerville deduces from the large number of cases examined and cited by him these principles:

"(1) That the 'substance' of the proposed law [section 106 of the Constitution requiring that the notice 'shall state the substance of the proposed law,' etc., we remind] means, not merely the subject of it, but an intelligible abstract or synopsis of its material and substantial elements; * * * (2) the substance of the act may be sufficiently stated without stating the details which are subsidiary to the stated elements; * * * and (3) the Legislature is not inhibited from shaping up and working out the details of local legislation by amending bills when presented for consideration and passage."

Mr. Justice Somerville then observed that: "In the application of these rather general principles, there seems to be much room for conflicting opinion, and, indeed, we have some cases of more than doubtful consistency," etc.

All we care to say, further, on this first ground of alleged unconstitutionality of the act here in question is that we have carefully examined same in its relation to the "published notice," and are of the opinion, and hold, that the "principles" above set forth were not violated. The notice given was sufficient, under section 106 of the Constitution, supra. And see State ex rel. J. G. Austin v. M. L. Black, supra.

■ Now, with reference to the second of the above-noted grounds of the alleged unconstitutionality of the act in question, we observe that counsel for respondent cite, and strongly rely upon, the response by the Supreme Court to this court to the certified question in the case of Hudgens v. State, 15 Ala. App. 156, 72 So. 605, 606, wherein that court says this: "This court is of the opinion that the notice given as to the proposed bill first enacted became functus officio upon the enactment of said bill. Therefore the said notice and proof of the publication of same, before the passage of said first local law, could not be used to obviate the necessity for complying with sections 106 and 107 of the Constitution of 1901, as to the required publication and proof of the notice essential to the validity of the second enactment. We hold that publication and proof of the notice (as to the proof) as to the first enactment did not dispense with a separate and distinct notice as to the substance of the second enactment, for four consecutive weeks, and proof thereof as required by section 106 of the Constitution."

Upon the above response by the Supreme Court, this court held that a local act repealing a local act, which had been enacted earlier in the same session of the Legislature, must have, as its basis, etc., its own "notice and proof," etc., in accordance with section 107 of the Constitution, and could not be enacted upon the force of the "notice, etc.," which had been given, etc., for the enactment of the act which was sought to be repealed.

Well, waiving—though we need not—the special requirements of section 107 of the Con-

stitution, which had effect in the said Hudgens Case, it will be observed that, here, there had been no "enactment" of any law upon the strength of the "published notice," admitted to have been given, proved, etc.

Senate Bill No. 171, though it passed both houses of the Legislature, never became an "act passed." Jemison v. Town of Ft. Deposit, supra. Being vetoed by the Governor, and not repassed over his veto, it was itself functus officio—as though it had never been.

So, it not being controverted, in fact, being admitted, that the notice was given, proved, etc., all in accordance with section 106 of the Constitution, and, as we have held hereinabove, sufficient, under the rules, there is no merit in the suggestion that said notice had been exhausted, or had become functus officio, because of the attempt, abortive and ineffective, to enact an identical law, earlier in the same session of the Legislature, on the strength of this same notice.

It thus appearing that the act referred to is not, as a whole, at least, unconstitutional, and that whatever might be said as to the unconstitutionality vel non of the provision in section 3 thereof, as to the judge of same "practicing law," etc., yet the enactment of the law was valid, and nothing appears against the binding force of section 10 of same.

Even if any part, or all, of section 3 is unconstitutional—a question not necessary to be here decided—under the terms of the act itself, this would affect the validity of no other section.

And it being plain that section 10 of said act is constitutional and valid, the writ of mandamus prayed for should be issued. And it is so ordered.

Writ granted.